**BINGHAM MCCUTCHEN LLP**
Jeffrey S. Sabin
Edwin E. Smith
Joshua Dorchak
399 Park Avenue
New York, NY 10022
Telephone:  (212) 705-7000
Fax:  (212) 752-5328

Sabin Willett (*pro hac vice*)
S. Elaine McChesney (*pro hac vice*)
Jason L. Watkins (*pro hac vice*)
One Federal Street
Boston, Massachusetts 02110
Telephone:  (617) 951-8000
Fax:  (617) 951-8736
*Attorneys for Adversary Proceeding Plaintiff-Appellant Bank of America, N.A.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>Debtor. | Chapter 11 Case No. 08-13555 (JMP)<br><br>(Jointly Administered) |
| In re:<br><br>LEHMAN BROTHERS SPECIAL FINANCING INC.,<br><br>Debtor. | Chapter 11 Case No. 08-13888 (JMP) |
| BANK OF AMERICA, N.A.,<br><br>Plaintiff and Counterclaim-Defendant,<br>v.<br><br>LEHMAN BROTHERS HOLDINGS INC.,<br><br>Defendant and Counterclaim-Plaintiff, and<br><br>LEHMAN BROTHERS SPECIAL FINANCING INC.,<br><br>Defendant. | Adv. Proc. No.<br>08-01753 (JMP) |

**MEMORANDUM OF LAW IN SUPPORT OF BANK OF AMERICA, N.A.'S MOTION FOR (1) STAY PENDING APPEAL AND**
**(2) APPROVAL OF FORM OF SUPERSEDEAS BOND**

# TABLE OF CONTENTS

Page

I.   PRELIMINARY STATEMENT ..................................................................................... 1

II.   ARGUMENT .............................................................................................................. 2

    A.   Relief Under Fed. R. Civ. P. 62(d) ...................................................................... 2

    B.   Relief Under Fed. R. Bankr. P. 8005 ................................................................... 4

    C.   Bank of America Meets the Standard for a Discretionary Stay Under Rule
        8005 ..................................................................................................................... 6

        1.   The Debtors Will Not Suffer Any Injury If the Stay Is Issued ................. 6

        2.   Bank of America Will Suffer Irreparable Harm If the Stay Is
            Denied ...................................................................................................... 6

        3.   The Bank Has Established a Substantial Possibility of Success on
            Appeal ...................................................................................................... 7

        4.   The Public Interest Will Benefit from Entry of a Stay ........................... 13

    IV.   CONCLUSION ........................................................................................................ 14

# TABLE OF AUTHORITIES

*200 E. 87th St. Associates v. MTS, Inc.*, 793 F. Supp. 1237, 1251
    (S.D.N.Y. 1992).............................................................................................8

*Acevedo-Garcia v. Vera-Monroig*, 296 F.3d 13, 16 (1st Cir. 2002)...................................7

*In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 346-47
    (S.D.N.Y. 2007).............................................................................................5

*In re Applied Logic Corp.*, 576 F.2d 952. 960 (2d Cir. 1978).......................................8, 9

*In re Bennett Funding Group, Inc.*, 146 F.3d 136, 140
    (2d Cir. 1998)................................................................................................9

*Butler v. Mixter*, 124 U.S. 721. 727 (1888) ...................................................................4

*In re Country Squire Associate of Carle Place, L.P.*, 203 B.R. 182
    (B.A.P. 2d Cir. 1996).....................................................................................5

*FFG-NJ v. Holtmeyer (In re Holtmeyer)*, 229 B.R. 579
    (E.D.N.Y. 1999)........................................................................................2, 3

*Faiveley Transport Malmo AB v. Wabtec Corp.,*, 559 F.3d 110,
    116 (2d Cir. 2009).........................................................................................7

*Gerrity Co. v. Bonacquisiti Construction Co.*, 549 N.Y.S.2d 532.
    534 (App. Div. 1989)...................................................................................10

*Herbert v. Exxon Corp.,* 953 F.2d 936, 938 (5th Cir. 1992)..........................................2, 3

*Hirschfeld v. Board of Elections*, 984 F.2d 35 (2d Cir. 1993).......................................5, 7

*Innophos, Inc. v. Rhodia, S.A.*, 10 N.Y. 3d 25, 29, 882
    N.E. 2d 389 (N.Y. 2008)..............................................................................11

*International Multifoods Corp. v. Commercial Union Insurance Co.*,
    309 F.3d 76, 83 (2d Cir. 2002)................................................................11, 12

*Kipperman v.Netbank, FSB (In re Commercial Money Center, Inc.)*,
    Slip Op. at 3, No. 03-90331-H7 (Bankr. S.D. Cal. Aug. 1, 2005).................................2

*Koreag,, Controle et Revision,, S.A. v. Refco F/X Associates, Inc.*
    *(In re Koreag, Controle et Revision)*, 961 F.2d 341,
    355 (2d Cir. 1992)........................................................................................11

*Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*,
    595 F.3d 458, 466 (2d Cir. 2010)...................................................................11

*In re Legacy Healthcare, LLC*, 2010 WL 3782030
(W.D.N.Y. Sept. 20, 2010) ..................................................................5

*Lemaire v. MBank Abilene, N.A.*, 826 F.2d 387
388-89 (5th Cir. 1989) .....................................................................4

*LNC Investments, Inc. v. First Fidelity Bank*, 1997 WL 528283
*8 (S.D.N.Y. Aug. 27, 1997) .............................................................6

*In re Motors Liquidation Co.*, 2010 WL. 4449425
(Bankr. S.D.N.Y. Oct. 29, 2010) .......................................................5

*Peoples Westchester Sav. Bank v. F.D.I.C.*, 961 F.2d 327
331, 332 (2d Cir. 1992)...............................................................9, 10

*PJC Techs., Inc. v. C3 Capital Partners, L.P.*, 2010
WL. 376412 (W.D.N.Y. Jan 27, 2010).................................................5

*Stephenson v. Rickles Electric & Satellites*
*(In re  Best Reception Systems, Inc.)*, 219 B.R. 988
(Bankr. E.D. Tenn. 1998)...................................................................2

*Swan Brewery Co. v. U.S. Trust Co.*, 832 F. Supp.
714, 717-18 (S.D.N.Y. 1993)..............................................................9

*Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*,
60 F.3d 27, 36 (2d Cir. 1995)............................................................12

*Trustees of the Amalgamated Insurance Fund v. McFarlin's, Inc.*,
789 F.2d 98, 101 (2d Cir. 1986).........................................................6

*In re Victory Markets, Inc.*, 221 B.R. 298, 304 (B.A.P. 2d Cir. 1998) ..............12

## FEDERAL STATUTES AND RULES

11 U.S.C. § 362(a)(7)......................................................................2

11 U.S.C. § 506...........................................................................10

11 U.S.C. § 506(a) .........................................................................6

11 U.S.C. § 506(a)(1) ......................................................................6

11 U.S.C. § 542...........................................................................2

12 U.S.C. § 91 ............................................................................4

28 U.S.C. § 158(a) ......................................................................................................1

Fed. R. Civ. P. 62(a)(1)..............................................................................................3

Fed. R. Civ. P. 62(a)(2)..............................................................................................3

Fed. R. Civ. P. 65.......................................................................................................7

Fed. R. Civ. P. 62(d)...............................................................................................2, 3

Fed. R. Bankr. P. 7062..............................................................................................2

Fed. R. Bankr. P. 8005...........................................................................................1, 4

Fed. R. Bankr. P. 8001(a) .........................................................................................1

## STATE STATUTES

N.Y. Debt. & Cred. Law art. 6-A § 151 (2001) ....................................................8

N.Y. U.C.C. § 9-109(d)(10) ....................................................................................11

N.Y. U.C.C. § 9-340(b).............................................................................................10

N.Y. U.C.C. § 9-404 ................................................................................................11

## MISCELLANEOUS

Prof. Stephen L. Sepinuck, *Isn't That Special? New York Court Rejects Secured Party's Right to Exercise Setoff Against $509 Million Deposit*, 26 ............................12

Plaintiff/Appellant Bank of America, N.A. (the "Bank") submits this memorandum in support of its Motion for Approval of Form of *Supersedeas* Bond, or alternatively, Grant of Stay Pending Appeal (the "Motion"). Pursuant to Fed. R. Bankr. P. 7062, Fed. R. Civ. P. 62(d), and L.R. 8005-1, the Bank has moved for an order approving the form of *supersedeas* bond in the form attached to the Bank's proposed Order Granting Bank of America, N.A.'s Motion for Stay Pending Appeal as Exhibit A, to be posted with the Court in aid of entry of a stay as of right against enforcement of this Court's Judgment In An Adversary Proceeding (the "Judgment"), and its related order of December 3, 2010. Alternatively, pursuant to Fed. R. Bankr. P. 8005 and L.R. 8005-1, the Motion seeks a stay of execution of judgment, in connection with which the Bank would post an identical bond.

## I.   PRELIMINARY STATEMENT

On December 3, 2010, this Court entered "Judgment in an Adversary Proceeding" [A.P. Docket No. 99] in favor of the Debtors (Defendants and Plaintiff-in-counterclaim), ordering that the Bank "pay to [them] cash in the amount of $501,800,000 (the "Funds"), plus simple interest on the funds calculated at the rate of 9% per annum from November 10, 2008 until the date of entry of the Judgment [*i.e.*, December 3, 2010]." The Judgment follows this Court's November 16, 2010 Memorandum Decision Granting Motion for Summary Judgment of Lehman Brothers Holdings Inc. and Lehman Brothers Special Financing Inc. and Denying Motion for Summary Judgment of Bank of America, N.A. (the "Decision") [A.P. Docket No. 89].[1]

On December 15, 2010, the Bank filed in this Court (i) its notice of appeal of the Judgment and Order pursuant to 28 U.S.C. § 158(a) and Fed. R. Bankr. P. 8001(a), and (ii) the Motion.

In its Judgment and Decision, the Court held, first, that the Bank did not have a right of setoff with regard to the funds that it set off on November 10, 2008, and, second, that the Bank's

---

[1] On December 3, the Court entered its order granting the summary judgment motion of the Debtors and denying the cross-motion of the Bank ("Order") [A.P. Docket No. 98].

exercise of setoff violated the automatic stay provisions of 11 U.S.C. § 362(a)(7). *See generally* Decision, Slip Op. at 38 (concluding that Bank had no right of setoff); *id*. at 43 (concluding that Bank's setoff violated automatic stay); *see also* Order at 3 (stating that automatic stay was violated). With the Judgment now having entered, the Bank sets out below the bases upon which execution of judgment should be stayed pending appeal.

## II.     ARGUMENT

**A.     Relief Under Fed. R. Civ. P. 62(d).**

Fed. R. Civ. P. 62(d), which applies in adversary proceedings under Fed. R. Bankr. P. 7062, provides that a party that loses in the bankruptcy court and timely appeals may obtain, as of right, a stay of execution of a judgment, upon the posting of a *supersedeas* bond in form acceptable to the Court. Rule 62(d) provides, in pertinent part, that "[i]f an appeal is taken, the appellant may obtain a stay by supersedeas bond . . . [which] may be given . . . after filing the notice of appeal. The stay takes effect when the Court approves the bond." In *FFG-NJ v. Holtmeyer (In re Holtmeyer)*, 229 B.R. 579, 582 (E.D.N.Y. 1999), the district court held that "Fed. R. Civ. P. 62 applies to all adversary proceedings. Rule 62(d), in turn provides for an automatic stay upon the posting of a *supersedeas* bond."

The Bank is not aware of controlling authority in the Second Circuit that would be dispositive of this case; *i.e.,* applying Rule 7062 to a judgment entered in a *turnover* action under 11 U.S.C. § 542.[2] One bankruptcy judge, in a case involving a specific *res* (bonds) held that Rule 7062 does not apply to turnover actions "because a bond may not adequately compensate a non-appealing party for loss incurred as a result of the stay of a non-money judgment." *Kipperman v. Netbank, FSB (In re Commercial Money Center, Inc.)*, Slip Op. at 3, No. 03-90331-H7 (Bankr. S.D. Cal. Aug. 1, 2005)[3], *citing Stephenson v. Rickles Elec. & Satellites (In re Best Reception Systems, Inc.)*, 219 B.R. 988, 996 (Bankr. E.D. Tenn. 1998), *quoting Herbert v. Exxon Corp.*, 953 F.2d 936, 938 (5th Cir. 1992). Concluding that its turnover order was a

---

[2] Count VI of the Counterclaim seeks turnover pursuant to section 542 of the Code [A.P. Docket No. 6].

[3] A copy is attached as <u>Exhibit</u> <u>A</u>.

mandatory injunction directing delivery of the specific bonds, the court ruled that Rule 7062 did not apply.

The Bank respectfully submits that this non-controlling decision was incorrect. Because, properly viewed, the counterclaim here was not "an action for an injunction or a receivership," Fed. R. Civ. P. 62(a)(1), or an accounting in an action for patent infringement, Fed. R. Civ. P. 62(a)(2), relief should be available under Fed. R. Civ. P. 62(d). *Accord, Holtmeyer*, 229 B.R. at 582. In any event *Kipperman* is distinguishable, for it involved a distinct *res* -- the bonds -- while here, the Court's Judgment is functionally a damages award. The Court has ordered that the Bank "pay . . . cash," *see* Judgment, rather than any distinct *res*.[4] Most important, the proposed bond will fully "compensate [the Debtors] for loss incurred as a result of the stay." *See Herbert*, 953 F.2d at 938.

Accordingly, the Bank believes that its request comes within Rule 7062, and that a stay against execution on the Judgment should automatically take effect upon the posting of a bond in a form approved by this Court. The Bank has tendered with its form of order a form of bond which it believes complies fully with L.R. 8005-1. The bond would be issued by [the Travelers Insurance Company] in favor of the Defendants/Appellees, in the face amount of $660,553,847.34, and would be payable, up to the face amount, in the amount of that judgment in favor of the Defendants/Appellees (if any) that becomes final upon the conclusion of appeals of the Judgment. The face amount was calculated as follows:

---

[4] Having set off cash in 2008, and believing the cash to be its own property, the Bank did not hold the cash in a separate account. Accordingly there is no distinct fund or other "res" to be turned over; general funds of the Bank would be used.

| Principal | $501,800,000.00 |
| Interest @ 9%, Nov. 10, 2008 -- Dec. 3, 2010 | $ 93,293,556.16[5] |
| **Judgment Amount** | **$595,093,556.16** |
| 11% of Subtotal | $ 65,460,291.18 |
| TOTAL Amount of Bond | $660,553,847.34 |

As the proposed bond complies with the local rule, the Court should approve its form, thus permitting the Bank to obtain an automatic stay against execution of the judgment pending appeal, upon submission to the Court of the bond to be issued according to the form.

In addition, an automatic stay of execution arises under 12 U.S.C. § 91, which prohibits execution of a judgment against a national banking association until all appeals have been finally resolved. *See Lemaire v. MBank Abilene, N.A.,* 826 F.2d 387, 388-89 (5th Cir. 1989) (reference to "final judgment" in section 91 means "a judgment after all appeals have been exhausted"); *see also Butler v. Mixter,* 124 U.S. 721, 727 (1888) (section 91 applicable in federal as well as state courts).

**B.      Relief Under Fed. R. Bankr. P. 8005.**

Alternatively, if the Court concludes that automatic relief is not available under Rule 62(d) or 12 U.S.C. § 91, the Bank requests that the Court allow a discretionary stay of execution of judgment.

Rule 8005 of the Federal Rules of Bankruptcy Procedure governs the issuance of discretionary stays pending appeal from judgments in adversary proceedings. A motion for stay must ordinarily be brought, in the first instance, in the Bankruptcy Court. This Court may make an "appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest." *Id.*[6] The Court may condition the grant of stay "on the filing of a bond or other appropriate security with the Bankruptcy Court." *Id.*

Four factors govern the exercise of this Court's discretion on a request for a stay under

---

[5] The Bank will argue on appeal that the state rate for prejudgment interest was inappropriate. However, allowance of the Motion would protect the Debtors' expectation in the event of affirmance.

[6] In the event of denial of a motion for stay, relief thereafter may be sought from the district court. Fed. R. Bankr. P. 8005.

Rule 8005:

> (1) whether a party will suffer substantial injury if a stay is issued;

> (2) whether the movant will suffer irreparable injury absent a stay;

> (3) whether the movant has demonstrated a "'substantial possibility, although less than a likelihood, of success'" on appeal; and

> (4) the public interests that may be affected.

*In re Country Squire Assoc. of Carle Place, L.P.*, 203 B.R. 182, 183 (B.A.P. 2d Cir. 1996) (adopting Rule 8005 standard set forth in *Hirschfeld v. Board of Elections*, 984 F.2d 35 (2d Cir. 1993)).[7] No one factor is dispositive; courts balance them in light of the particular circumstances in the case. *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 346-47 (S.D.N.Y. 2007). Even where appellant "has not made a strong showing that it is likely to succeed on appeal," a stay may be granted where there is a sufficient risk of irreparable harm. *In re Legacy Healthcare, LLC*, 2010 WL 3782030 at *1 (W.D.N.Y. Sept. 20, 2010).

The Bank submits that judicial economy would best be served by a simple grant of the Motion, and requests that relief. However, in the alternative the Bank notes that a second course lies open to a bankruptcy judge. He may exercise his discretion to grant a stay of limited duration, to permit the appellant to seek a longer stay in the district court. A recent order from Judge Gerber illustrates this approach. *See Motors Liquidation*, 2010 WL 4449425 (Bankr. S.D.N.Y. Oct. 29, 2010). That case involved the termination of an automobile dealer's franchise agreement with the debtor and the substitution of a new dealer under a new agreement. Judge Gerber issued in favor of the losing party a stay of limited duration, which permitted District Judge Patterson to hear (and, as it happened, deny) the appellant's stay motion in the district court.

---

[7] This standard is widely accepted in this circuit. *See, e.g.*, *In re Legacy Healthcare, LLC*, 2010 WL 3782030 (W.D.N.Y. Sept. 20, 2010) (applying *Hirschfeld* standard to grant stay pending appeal of bankruptcy order); *In re Motors Liquidation Co.*, 2010 WL 4449425 (Bankr. S.D.N.Y. Oct. 29, 2010) (applying standard in appeal from bankruptcy court order); *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 346 (S.D.N.Y. 2007) (same); *PJC Techs., Inc. v. C3 Capital Partners, L.P.*, 2010 WL 376412 (W.D.N.Y. Jan 27, 2010) (same).

**C.  Bank of America Meets the Standard for a Discretionary Stay Under Rule 8005.**

**1.  The Debtors Will Not Suffer Any Injury If the Stay Is Issued.**

The motion would impose no harm upon the Debtors.  The question here is simply whether a bond posted by the Bank to back its obligation to perform the judgment in the event of an affirmance on appeal causes any harm to the Debtors.  And it does not.  The Debtors have no immediate need for the cash in their operations or for plan distributions.  Nor are the Debtors insecure.  As this Court has noted, "BOA certainly has the resources to restore the funds plus any damages that may be awarded."  Decision, Slip Op. at 44.

**2.  Bank of America Will Suffer Irreparable Harm If the Stay Is Denied.**

The Judgment orders turnover, into the Debtors' general funds, of moneys the Bank believes to be its property.  If the Bank is determined to be correct on appeal, the Bank would be entitled, in the first instance, to return of the funds themselves.  That will not be possible if they have been commingled.  At minimum, the Bank would be entitled to be restored to the position of a secured creditor.  11 U.S.C. § 506(a) ("allowed claim of a creditor . . . that is subject to setoff under section 553 of this title, is a secured claim . . . to the extent of the amount subject to setoff. . . .").  However, payment of the Judgment amount, and the subsequent commingling of moneys in the Debtors' general accounts, might give rise to issues concerning the perfection of that claimed security interest.  The essential purpose of this Motion is to ensure both that adequate funds will secure the Judgment, and that, in the event of a reversal on appeal, it will be possible to restore the secured status quo, which would be impossible if the Debtors commingled the funds.

To be sure, in the event secured status were lost, the Bank would assert an administrative claim.[8]  Future distinctions between secured and administrative status may be difficult to predict

---

[8] A ruling on appeal that the setoff right was valid would reestablish the Bank's right to a prepetition secured claim in the funds paid regardless of a stay violation.  11 U.S.C. § 506(a)(1).  To the extent the security interest were lost through commingling of collateral, the Bank ordinarily would be entitled to an administrative claim.  *See LNC Investments, Inc. v. First Fidelity Bank*, 1997 WL 528283 at *8 (S.D.N.Y. Aug. 27, 1997).  The Bank would also be in the position of any person who, during the post-petition period, has benefited the estate by the payment of funds to which the Debtors were not legally entitled, and therefore, be entitled to administrative status.  *See Trustees of the Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir. 1986).

at this juncture,[9] but it is clear that secured status could effectively and irreparably be lost. Administrative status might also hamper any effort to recover what otherwise would be the Bank's right to post-transfer interest, as part of a secured claim over the funds previously set off.

Grant of a stay under Rule 8005 is, of course, a remedy committed to the sound discretion of the Court, and in the exercise of that discretion the Court should have equitable considerations in mind. The Bank has acted equitably, in proposing an arrangement by which the Debtors would be fully protected on appeal by the posting of a bond.

### 3.    The Bank Has Established a Substantial Possibility of Success on Appeal.

In the Second Circuit, a core purpose of the discretionary stay pending appeal is the preservation of the *status quo.* Courts grant relief in accordance with their assessment of the relative "harm calculus" involved in either granting or withholding a stay pending appeal. This may explain why in this circuit, unlike others,[10] the merits element is expressed not as a requirement that the appellant demonstrate a *likelihood* of success on appeal, but rather that it demonstrate a "substantial possibility, although less than a likelihood" of success. *Hirschfeld*, 984 F.2d at 39.[11]

Thus, for the "merits" element, the real question is whether the points of law upon which

---

[9] Based on the Debtors' *current* operating reports, the prospect of administrative insolvency seems remote. But the sum at issue in this case is large, and denial of relief now forces the Court, at minimum, to make unnecessary predictions as to whether there might be irreparable harm later to the Bank, or to other parties in interest, in the event that the Bank prevailed on appeal and nevertheless were to take on the status of an administrative creditor, not ordinarily entitled, for example, to post-petition interest or attorneys' fees.

[10] *See, e.g.*, *Acevedo-Garcia v. Vera-Monroig*, 296 F.3d 13, 16 (1st Cir. 2002) ("The *sine qua non* [of the stay pending appeal standard] is whether the [movants] are likely to succeed on the merits.") (citation omitted).

[11] The rule reflects sensible, practical considerations. An appellate court may lack the time for a close review of the merits (particularly in a case like this one, that involves a substantial record in the trial court). And because the rule requires that in the first instance the very court that issued a decision hear the stay motion (even after the kind of extensive proceedings and detailed judicial review that has occurred in this case), it becomes unrealistic to suggest that such a court might find that it is likely to have erred. An echo of the rule is found in this circuit's articulation of the standard for the issuance of preliminary injunctions under Fed. R. Civ. P. 65, which may be met on a showing of "sufficiently serious questions going to the merits to make them a fair ground for litigation," as well as other factors. *Faiveley Transp. Malmo AB v. Wabtec Corp.,*, 559 F.3d 110, 116 (2d Cir. 2009) (citations omitted).

the decision is based are sufficiently novel or close that reversal is within the realm of meaningful possibility.  Here, the setoff question is dispositive, for the turnover Judgment follows from the ruling that setoff was improper.  The Bank respectfully submits that its position as to setoff presents a substantial possibility of a different outcome on appeal, for at least the following reasons:

a.      The Bank's position is grounded in uncontradicted legal rules and written contracts, the Security Agreement and the Master Agreement.[12]  It is undisputed that the right of setoff arises under the common law of New York, *see* Slip Op. at 21, the New York Debtor & Creditor Law,[13] and the standard terms and conditions of the account platform for the account in which the deposit was made.[14]  That right was preserved by a broad reservation of rights in section 14 of the Security Agreement.  The Debtors had to overcome this right by showing the creation of a "special purpose" account, in the face of a strong legal presumption that such accounts are general, *see* Slip Op. at 22, no *express* provision that this account be "special," and a provision in the general terms and conditions applicable to deposit accounts on the platform in question that setoff was preserved.

b.      More narrowly, the appeal presents an important question concerning the law of waiver.  In this circuit, waiver cannot be implied: there must be an "unmistakably clear" expression of intention to waive a right.  *In re Applied Logic Corp.*, 576 F.2d 952, 960 (2d Cir. 1978) (Friendly, J.); *200 E. 87th St. Assocs. v. MTS, Inc*., 793 F. Supp. 1237, 1251 (S.D.N.Y. 1992) ("intent to waive must be clearly established and cannot be inferred from doubtful or equivocal acts or language") (internal citations omitted).  This Court correctly found that the Bank "never expressed any intent to waive any of its legal rights including the well-understood right of setoff."  Slip Op. at 6.  The relevant contract provisions, sections 11 and 14 of the

---

[12] The Security Agreement is attached to the Declaration of Kevin M. Behan In Support of Bank of America's Motion for Summary Judgment ("Behan Decl.") [A.P. Docket No. 49] as Exhibit 2.  The Master Agreement is attached to the Behan Decl. as Exhibit 5.

[13] N.Y. Debt. & Cred. Law art. 6-A § 151 (2001).

[14] *See* Behan Decl., Ex. 20 at 19; ex. 35 at § 3 (grant of right of setoff in standard form of customer agreement) [A.P. Docket No. 49].

Security Agreement (whether "boilerplate" or not), *preserve* rights and remedies, rather than waiving them. It was undisputed that the parties focused closely on section 14. Mr. Yeung struck the "'Other Rights' Provision" from a draft of the Security Agreement, the Bank rejected this change, and the language was reinserted and accepted by the Debtors.[15] On appeal, a novel question will be presented as to whether the Debtors can establish waiver of a well-understood right, where an unambiguous agreement expressly reserves rights and contains no expression of waiver, the parties negotiated over whether the governing clause would be in or out of the agreement, and the Court itself found that the Bank never expressed an intention to waive.

      c.     A related, significant question is presented by the Court's decision with regard to the law of "general" versus "special purpose" accounts. A strong presumption arises under New York law that deposit accounts are general, rather than "special purpose" accounts. *Peoples Westchester Sav. Bank v. F.D.I.C.*, 961 F.2d 327, 332 (2d Cir. 1992); *Swan Brewery Co. v. U.S. Trust Co.*, 832 F. Supp. 714, 718 (S.D.N.Y. 1993) (collecting cases). The core question, on the admissible evidence, is whether the '465 Account could be deemed, as a matter of law, to be a "special purpose" account -- that is, an account in which "the bank becomes a bailee of the depositor, the title remaining with the latter." *See* Slip Op. at 21-22, *quoting Swan Brewery*, 832 F. Supp. at 717. To conclude that it was, in the face of express contractual language that the Bank preserved rights at common law, the Debtors conflated (a) the scope of the security interest granted over the '465 Account with (b) the waiver of setoff rights. *Applied Logic Corp.*, however, stands for the opposite proposition. Judge Friendly held for the Second Circuit that a bank had setoff rights, even though the parties intended that certain accounts be used for specific purposes:

> The other parties to the . . . agreements were highly sophisticated extenders of credit; if their intention was that [the bank] should not use its right of set off to their detriment, it would have been simple to say so . . . .That right was preserved by law, and it stood absent an agreement to waive it.

576 F.2d at 960. Here (a) the form of customer agreement for accounts within the relevant

_____

[15] Behan Decl. Ex. 63 [Yeung Dep. Tr.] at 174-75, 184-86 [A.P. Docket No. 49].

platform expressly preserved setoff rights, (b) there was no evidence that the '465 Account was required to be, or was in fact segregated (a "critical factor" in determining a fund to be special purpose, *see In re Bennett Funding Group, Inc.,* 146 F. 3d 136, 140 (2d Cir. 1998)), (c) the Bank paid interest on the '465 Account, a factor indicating general purpose status, *see Peoples Westchester,* 961 F. 3d at 331, (d) a Lehman entity included the account as part of its liquidity profile,[16] and (e) no third party had an interest in the account. *See Gerrity Co. v. Bonacquisiti Constr. Co.,* 549 N.Y.S.2d 532, 534 (App. Div. 1989) (account known to contain trust funds held by depositor as trustee is a "special purpose" account). This record presents a substantial possibility of reversal.

      d.      A fourth point suggesting a substantial possibility of reversal on appeal arises from section 9-340(b) of the Uniform Commercial Code, as applicable in New York. The section provides:

> *Recoupment or set off not affected by security interest.* Except as otherwise provided in subsection (c), the application of this article to a security interest in a deposit account does not affect a right of recoupment or set off of the secured party as to a deposit account maintained with the secured party.

N.Y. U.C.C. § 9-340(b) (2009) (emphasis added). This provision makes clear that a bank may hold *both* a right of setoff against, and an Article 9 security interest in, the same deposit account: "[B]y holding a security interest in a deposit account, a bank does not impair any right of set off it would otherwise enjoy." *Id.* Section 9-340(b) highlights what the Bank respectfully submits has been the Debtors' erroneous conflation of the law of secured transactions and the common-law of setoff. A common law right of setoff in commercial law is not the same thing as a security interest, notwithstanding their identical treatment for purposes of the Bankruptcy Code's claims resolution process under 11 U.S.C. § 506. A security interest may secure obligations not yet due; a common law right of setoff generally applies only to matured obligations. A security interest may secure contingent obligations; a common law right of setoff generally does not. A security interest may secure obligations denominated in a currency different from the currency in

---

[16] Behan Decl. Ex. 30 [Tonucci Dep. Tr.] at 18-19 [A.P. Docket No. 49].

which the collateral is denominated; there is some authority that a common-law right of setoff may not apply if the obligations are in different currencies.[17]  There are distinctions in priority as well.  A secured party with a security interest in certain rights to payment is, under N.Y. U.C.C. § 9-404, usually subject to the account debtor's claims and defenses, including setoff rights.  In other words, a security interest in a certain right to payment may be subject to the account debtor's setoff rights.  Although section 9-404 does not itself apply to a deposit account, the result is the same for a deposit account under section 9-340.[18]

Except for sections 9-340 and 9-404, Article 9 does not apply to the right of setoff.  *See* N.Y. U.C.C. § 9-109(d)(10) (confirming that, for commercial law purposes, a right of setoff is different from a security interest).  Because common-law setoff rights are generally much narrower than the rights that a negotiated security agreement may give to a secured party, it does not follow that an agreement to limit a security interest represents a retrenchment on the common-law setoff right.

e.    Infusing all of the substantive points, and creating its own distinct basis for appeal, is the Decision's treatment of extrinsic evidence.[19]  The Court correctly ruled that the language of the Security Agreement was unambiguous.  Slip Op. at 28.  There is strong support in this circuit (and under the law of New York) for the proposition that extrinsic evidence may not be admitted in the absence of contract ambiguity.  *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 466 (2d Cir. 2010) ("Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing.") (citation omitted)*; Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002) ("If the court finds that the contract is not ambiguous it

---

[17] *See Koreag,, Controle et Revision,, S.A. v. Refco F/X Associates, Inc. (In re Koreag, Controle et Revision)*, 961 F.2d 341, 355 (2d Cir. 1992).

[18] For example, suppose a bank maintained a deposit account, and an affiliate of the bank held a security interest in the deposit account to secure obligations owed to the affiliate.  Absent a waiver or contractual subordination by the depositary bank, the affiliate's security interest would be subject to the depositary bank's right of setoff.

[19] The Decision and Judgment proceeds from an unusual procedural posture -- cross-motions for summary judgment, but with an evidentiary hearing of limited scope.

should assign the plain and ordinary meaning to each term and interpret the contract without the aid of extrinsic evidence.") (citation omitted).[20]  The Court observed that while it "[did] not need" to examine extrinsic evidence, *citing Int'l Multifoods Corp.*, it was "useful to review the negotiations surrounding the creation and execution of the security agreement."  Slip Op. at 28-29.  On appeal, the Bank will submit that this was error:  that the rule prohibits consideration of extrinsic evidence under these circumstances.  In light of the authorities cited, and other authorities, there is a substantial possibility that this argument is correct.

This point is material to all of the legal analysis in the Decision, in particular to the Court's analysis of whether the '465 Account was a "special purpose" account.  The Decision bases that conclusion both in the express terms of the Security Agreement and in extrinsic evidence.  But the Bank respectfully submits that the express terms of the Security Agreement, standing alone, could never overcome the presumption that the deposit account was general purpose.  The Court (a) discounts as "boilerplate" the parties' express bargain to preserve common law rights, *see* Slip Op. at 25-28; *but see In re Victory Mkts., Inc.,* 221 B.R. 298, 304 (B.A.P. 2d Cir. 1998) (cited by the Court, Slip Op. at 26-27, for the correct proposition that "boilerplate" is perfectly enforceable), (b) finds relevance in prefatory clauses and clauses limiting the scope of the security interest, and (c) does not address the standard form of customer agreement for the '465 Account platform, showing that rights of setoff are preserved for accounts on that platform.  The real basis for its conclusion is the Court's extensive analysis of extrinsic evidence.  Slip Op. at 28-38.  On appeal the Bank expects to show, particularly in light of this Court's finding that the Security Agreement is unambiguous, that none of that material was admissible.  The provisions set out in the Security Agreement and Customer Agreement are inadequate to overcome the "strong presumption" that deposit accounts are general accounts.[21]

---

[20] *See also*, *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 36 (2d Cir. 1995) ("Under New York Law, extrinsic evidence is admissible only to resolve ambiguity in a contractual term."); *Innophos, Inc. v. Rhodia, S.A.,* 10 N.Y.3d 25, 29, 882 N.E.2d 389 (N.Y. 2008) ("Extrinsic evidence of the parties' intent may be considered only if the agreement is ambiguous, which is an issue of law for the courts to decide.").

[21] The immediate scholarly reaction to the Decision also suggests a substantial possibility of a different outcome on appeal.  *See* Prof. Stephen L. Sepinuck, *Isn't That Special?  New York Court Rejects*

This evidentiary point, standing alone, gives rise to a strong possibility of reversal. For the above reasons, this case presents a substantial possibility of reversal, and the test is met.

### 4.     The Public Interest Will Benefit from Entry of a Stay.

A stay of the turnover order would have no negative effect on the public interest. The Debtors do not require the funds either for operations or for a distribution, and indeed no plan of reorganization has been confirmed, and no distributions have been scheduled. The Bank has proposed to protect the public interest through a bond, and had previously proposed to do so through actual payment of funds into Court.

The public interest *would*, however, be served by staying the effect of the Court's Decision until appellate review is complete. The core proposition of the Decision is that a limitation on the nature of a security interest in an account may, *sub silentio*, work a waiver of the setoff rights of lending institutions. Such a rule would have broad application, in light of the frequency with which New York law governs commercial lending agreements, and consequently a dramatic impact on commercial lending. The public will be well served by appellate review, whether the result affirms or reverses this Court.

---

*Secured Party's Right to Exercise Setoff Against $509 Million Deposit*, 26 Clarks' Secured Transactions Monthly 3 (2010).

## IV.    CONCLUSION

The Motion should be allowed.

Dated: New York, New York

December 15, 2010

Respectfully submitted

**BINGHAM McCUTCHEN LLP**

/s/   Joshua Dorchak
Jeffrey S. Sabin
Edwin E. Smith
Joshua Dorchak
399 Park Avenue
New York, NY 10022
Telephone:  (212) 705-7000
Facsimile:  (212) 752-5378
jeffrey.sabin@bingham.com
edwin.smith@bingham.com
joshua.dorchak@bingham.com


/s/ Sabin Willett
Sabin Willett (*pro hac vice*)
S. Elaine McChesney (*pro hac vice*)
Jason L. Watkins (*pro hac vice*)
One Federal Street
Boston, MA 02110
Telephone:  (617) 951-8000
Facsimile: (617) 951-8736
sabin.willett@bingham.com
elaine.mcchesney@bingham.com
jason.watkins@bingham.com